IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROSA MYKINS, etc., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 11-0264-WS-M |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| HUMAN RESOURCES, etc., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on the motion of all remaining defendants to dismiss.  (Doc. 17).  The parties have filed briefs in support of their respective positions, (Docs. 17, 22, 24), and the motion is ripe for resolution.  After carefully considering the foregoing, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

Like most infants, Saquoia Riley[1] is unaware of the fuss that surrounds her.  But unlike with most infants, this fuss centers on who will have custody of her.  Saquoia's mother, Kelly Riley, is a guest of the Alabama prison system, and her father is absent from this story.  Plaintiff Rosa Mykins is Saquoia's paternal grandmother, who sues in her own right and as guardian of two other granddaughters, who are Saquoia's half-sisters.  The remaining defendants are the Alabama Department of Human Resources

---

[1] She is so named in the complaint.  The plaintiffs' brief in opposition to the motion to dismiss spells her name "Sequoia."

("ADHR"), the Baldwin County Department of Human Resources ("BCDHR") (collectively, "the DHR defendants" or "DHR"), and Thomas and Jena Craig.

Defendant Sheila Stone has been dismissed without prejudice on the plaintiff's motion. (Doc. 23). Several fictitious defendants are listed in the style and elsewhere, (Doc. 1, 10), but "[a]s a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). There is a "limited exception" to this rule "when the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage." *Id.* (internal quotes omitted). Simply identifying a defendant as "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute" does not implicate this exception, because it is "insufficient to identify the defendant among the many guards employed at CCI." *Id.* Dismissal of a purported claim against such an inadequately identified defendant is proper. *Id.* Here, the complaint identifies the fictitious defendants only as "working for BCDHR," whose undescribed conduct "contribut[ed] to the violation of Plaintiffs' constitutional and statutory rights." (Doc. 1 at 10). This is no more sufficient a description than that in *Richardson*. Accordingly, all claims against fictitious defendants will be dismissed, without prejudice to the plaintiff's ability to file a timely amended complaint asserting claims against additional named defendants.

According to the complaint, Riley and Saquoia are white, while Mykins, her son and her other two granddaughters are Latino. Mykins is the legal guardian and custodian of these two granddaughters, and she desires custody of Saquoia. Riley likewise wants Mykins to have custody of Saquoia while Riley serves her prison sentence. DHR, however, does not want a Latina having custody of a white child and has resisted, both passively and actively, Mykins' efforts to gain custody, despite knowing of Riley's wishes and despite having no good reason to do so. DHR has instead favored the Craigs, who are white, run a foster home, have temporary custody of Saquoia and desire to adopt her.

The complaint contains 21 counts, but the plaintiffs have abandoned three of them.[2]  They have also clarified that their pendent state-law claims are asserted only against the fictitious defendants, (Doc. 22 at 24), which claims therefore are effectively out of the case.[3]  The claims remaining in the case, and the defendants against which they are asserted, are as follows:

- Count 1     Equal protection                              DHR
- Count 3     Procedural due process                     DHR
- Count 4     Substantive due process                   DHR
- Count 6     Substantive due process                   DHR
- Count 7     Title VI                                           DHR
- Count 8     Multiethnic Placement Act ("MEPA")   DHR
- Count 9     Small Business Job Protection Act       DHR
-  Count 10    Section 1985(3)                              DHR and Craigs
- Count 11    Section 1986                                  DHR and Craigs
- Count 12    Section 1986                                  DHR and Craigs
- Count 19    Declaratory Judgment                      DHR
- Count 21    Procedural Due Process                    DHR[4]

---

[2] The plaintiffs have expressly abandoned Counts 2 and 5.  (Doc. 22 at 12 n.4).  They have dismissed defendant Stone, (Docs. 20, 23), who is the only defendant under Count 20.

[3] The plaintiffs do not identify these counts, but they clearly include Count 13 (violation of Alabama Constitution); Count 14 (declaration that the defendants abused their discretion under state law); Count 15 (declaration concerning effect of state statute regarding mother's consent); Count 16 (declaration concerning effect of state statute regarding DHR's consent); Count 17 (declaration that defendants violated the Alabama Constitution); and Count 18 (declaration that DHR failed to comply with a state statute).  (Doc. 1 at 38-42).  The plaintiffs offer no defense of these counts in their opposition brief.

[4] The plaintiffs confirm that only the Section 1985 and 1986 claims include the Craigs as defendants.  (Doc. 22 at 25).

## DISCUSSION

The defendants assert an array of arguments, some of which have been mooted by the deletion of claims noted above.  The Court addresses only those necessary to resolve their motion.

### A.  Pleading Sufficiency.

The defendants offer what appears to be a pro forma listing of pleading rules, accompanied by unadorned pronouncements that the rules have been violated but with no effort to demonstrate that this is so.  The defendants first note that Rule 10(b) renders it improper for a complaint to combine multiple claims in a single count.  (Doc. 17 at 2-3).  They do not, however, identify any instance in which the complaint violates this rule, and the Court finds none.

The defendants also object that the complaint does not specify which claims are asserted against which defendants.  (Doc. 17 at 2).  Whatever the deficiencies of the pleading itself , the plaintiff's clarifications in brief leave it clear what claims are asserted against which defendants.  The remaining claims, and the defendants under each, are set forth above.

In a related vein, the defendants argue that the complaint fails to identify adequately the constitutional rights alleged to have been violated.  (Doc. 17 at 4).  It is difficult to see how a count entitled, for example, "Fourteenth Amendment Procedure [sic] due Process Violation," (Doc. 1 at 45), can leave obscure the constitutional right at issue, and no count is any less clearly denominated.

Next, the defendants provide a primer on the *Twombly-Iqbal* plausibility standard, (Doc. 17 at 3-4), but they identify no failure of the complaint to attain this standard.  Even a quick review of the complaint reveals that it offers many allegations of fact to support the claims asserted therein, far more than required to show plausibility.

Finally, the defendants invoke the "heightened pleading" standard, (Doc. 17 at 4-5), again without pointing out any manner in which the complaint falls short.  At any rate,

[4]

"[a]fter *Iqbal*, it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints."  *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).  Instead, "whatever requirements our heightened pleading standard once imposed have since been replaced by those of the *Twombly-Iqbal* plausibility standard."  *Id*. at 707 n.2.

### B. Sovereign Immunity.

States are immune from suit in federal court by virtue of the Eleventh Amendment.  Such immunity extends to entities having a sufficiently close connection to the state that a suit against the entity is effectively one against the state itself.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984).  The DHR defendants assert Eleventh Amendment immunity under this standard as to all federal claims against them.   (Doc. 17 at 17-23, 25-26).

Whether an entity other than the state itself partakes of the state's Eleventh Amendment immunity depends on whether it is an "arm of the state."  *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280 (1977).  "Whether [a defendant] is an arm of the state protected by the Eleventh Amendment turns on its function and character as determined by state law.  ... Factors that bear on this determination include the definition of 'state' and 'political subdivision,' the state's degree of control over the entity, and the fiscal autonomy of the entity."  *Fouche v. Jekyll Island - State Park Authority*, 713 F.2d 1518, 1520 (11th Cir. 1983). A fourth factor, sometimes subsumed within the "fiscal autonomy" factor, is "who is responsible for judgments against the entity."  *Tuveson v. Florida Governor's Council on Indian Affairs, Inc.,* 734 F.2d 730, 732 (11th Cir. 1984).  "[T]he most important factor is how the entity has been treated by the state courts."  *Versiglio v. Board of Dental Examiners*, ___ F.3d ___, 2011 WL 3759637 at *1 (11th Cir. 2011) (internal quotes omitted).

The DHR defendants do not undertake this analysis, which might be problematic had the plaintiff challenged their status, but she does not.  On the contrary, the complaint

[5]

describes ADHR as a state agency and BCDHR as a creature of state statute, and it repeatedly refers to them as "the State Defendants."  (Doc. 1 at 8, 30-34).  Both were created by the Alabama Legislature, Ala. Code §§ 38-2-1, -8, and both partake of sovereign immunity under state law.  *Ex parte Alabama Department of Human Resources*, 999 So. 2d 891, 896 (Ala. 2008) (ADHR); *Ex parte Trawick*, 959 So. 2d 51, 55-56 (Ala. 2006) (county DHR).  Finally, a number of federal courts have determined that Alabama state and county DHRs are protected by the Eleventh Amendment.[5]  Given that the DHR defendants are clothed with sovereign immunity under state law, that they are routinely found to be arms of the state for purposes of Eleventh Amendment analysis, and that the plaintiff does not contest their status as such, the Court concludes that they are shielded by the Eleventh Amendment.

The plaintiff correctly notes that a state may waive the protection of the Eleventh Amendment and that Congress may abrogate it by appropriate legislation.  (Doc. 22 at 8-10).  Except with respect to his Title VI claim, however, he does not assert that either breach of the sovereign immunity citadel has occurred.  (*Id*. at 10-12).

With respect to Title VI, "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of … title VI of the Civil Rights Act of 1964 ..., or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1).  "Section 2000d-7 unambiguously conditions the receipt of federal funds on a waiver of Eleventh Amendment immunity to claims" identified

---

[5] *E.g., Thomas v. Buckner*, 2011 WL 4071948 at *6 (M.D. Ala. 2011) (Watkins, C.J.); *Ford v. Child Support DHR*, 2010 WL 2305305 at *1 (M.D. Ala. 2010) (Moorer, M.J.); *Ziegler v. Alabama Department of Human Resources*, 710 F. Supp. 2d 1229, 1249 (M.D. Ala. 2010) (Albritton, J.); *Danzy v. State of Alabama*, 2010 WL 1994902 at *1 (S.D. Ala. 2010) (DuBose, J.); *Johnson-Price v. Alabama Department of Human Resources*, 2010 WL 1268095 at *4 (M.D. Ala. 2010) (Thompson, J.); *Mack v. Alabama Department of Human Resources*, 201 F. Supp. 2d 1196, 1207 (M.D. Ala. 2002) (DeMent, J.); *Liedel v. Juvenile Court*, 707 F. Supp. 486, 487, 492 (N.D. Ala. 1989) (Haltom, J.).

[6]

therein.  *Garrett v. University of Alabama at Birmingham Board of Trustees*, 344 F.3d 1288, 1291 (11th Cir. 2003); *accord Sandoval v. Hagan*, 197 F.3d 484, 493 (11th Cir. 1999), *rev'd on other grounds*, 532 U.S. 275 (2001).  The DHR defendants neither challenge this proposition[6] nor deny the complaint's assertion that they have received federal funds triggering waiver.  (Doc. 1 at 4).  They have thus failed to show their entitlement to Eleventh Amendment immunity as to the Title VI claim.

The Eleventh Amendment bars equitable relief against the state just as surely as it bars monetary relief.  *Pennhurst*, 465 U.S. at 120 ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting *any* relief on that claim.") (emphasis added); *id*. at 100-01 ("This jurisdictional bar applies regardless of the nature of the relief sought," including "demands for the enforcement of equitable rights and the prosecution of equitable remedies") (internal quotes omitted).  The plaintiff does not dispute this, but he notes that the Eleventh Amendment does not bar actions for injunctive relief against state officers.  (Doc. 22 at 12).  The problem is that the plaintiff has sued no state officers, only state entities.  The "state officers" to which he refers are the fictitious defendants, (*id*.), which are subject to dismissal as discussed above.

In summary, all claims against the DHR defendants, other than for violation of Title VI, are barred by sovereign immunity.


**C.  Section 1983.**

The DHR defendants correctly note that a state is not a "person" capable of being sued under Section 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  They assume that any entity partaking of Eleventh Amendment immunity likewise constitutes the "state" for purposes of this ruling, an assumption the Court will

---

[6] On the contrary, they concede that Section 2000d-7 is a legitimate waiver provision. (Doc. 17 at 23).

indulge for present purposes.  The problem is that the DHR defendants have not shown that the plaintiff does or must bring his Title VI claim against them through the vehicle of Section 1983.[7]  Whatever arguments the DHR defendants could have made in this regard, they have not done so, and the Court will not construct or support arguments on their behalf.

### D.  Intended Beneficiaries.

In their reply brief, the DHR defendants assert that the plaintiff has "waived or abandoned" his Title VI claim because he did not respond to an argument they made in their principal brief, specifically, that the plaintiff and her grandchildren are not "intended beneficiaries of the Act."  (Doc. 24 at 2).  The threshold fatal defect with this position is that the DHR defendants did not in their principal brief actually raise any such argument,[8] and the plaintiff could scarcely have erred by not responding to an unarticulated argument.[9]

### E.  Conspiracy Claims.

The only claims remaining for discussion are the Section 1985 and 1986 claims against the Craigs.  They argue that these claims are inadequately pleaded.  (Doc. 17 at 16-17).

---

[7] Count Seven mentions Section 1983 only as a possible "additional remedy," and that "with respect to the individually named defendants."

[8] Nothing remotely resembling this argument appears in the defendants' brief except in a section explicitly limited to the MEPA claim.  (Doc. 17 at 11).

[9] The Court leaves for another day the defendants' position that the mere failure to respond to an argument raised on motion to dismiss constitutes an abandonment of all claims to which the argument relates, but it appears this has not been the Eleventh Circuit approach to motions for summary judgment.  *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").

While "the liberal notice pleading standards embodied in Federal Rule of Civil Procedure 8(a)(2) do not require that a plaintiff specifically plead every element of a cause of action [, ...] it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (internal quotes omitted); *accord American Federation of Labor and Congress of Industrial Organizations v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011).

"The elements of a cause of action under § 1985(3) are: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Trawinski v. United Technologies*, 313 F.3d 1295, 1299 (11th Cir. 2002) (internal quotes omitted).  The Craigs deny that the complaint contains direct or inferential allegations concerning the first two of these elements, but they offer no discussion of Count Ten or the factual allegations that precede it.  From the Court's own review it appears that the *Trawinski* standard is met and, absent explanation from the Craigs as to how this is not so, the Court must reject their ipse dixit.

As noted in Part A, the defendants make a blanket *Twombly-Iqbal* objection but fail to identify any particular deficiency, and the Court will not search for deficiencies on their behalf.

Finally, the Craigs assert that Section 1985(3) claims are subject to a heightened pleading standard.  To the extent that *Kearson v. Southern Bell Telephone & Telephone Co.*, 763 F.2d 405 (11th Cir. 1985), and other cases may have imposed an elevated pleading standard for such claims, the Craigs have not explained how that standard could have survived *Randall*, discussed in Part A.  Nor have the Craigs identified any failure of the complaint to attain such a standard.

[9]

The Craigs' only challenge to the Section 1986 counts is the observation that they are derivative of the Section 1985(3) claim.  Since the latter claim survives, the former claims survive as well.

### F.  Shotgun Pleading.

As many scattershot pleading arguments as the defendants raise, they do not assert that the complaint is a "'shotgun' pleading, in that each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading." *Thompson v. RelationServe Media, Inc*., 610 F.3d 628, 650 n.22 (11th Cir. 2010).  Given that the 47-page complaint contains over 100 numbered paragraphs, roughly 80 of which precede the first count, and that each of the 21 counts purports to "adopt and incorporate all of the facts and allegations set forth above as if fully set forth therein," the classification of the complaint as a shotgun pleading cannot be doubted.

The defendants' silence is no impediment to judicial action.  "When faced with a shotgun pleading, the trial court, whether or not requested to do so by the party's adversary, ought to require the party to file a repleader." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006).  Especially given that this action has been reduced to one containing a single count against the DHR defendants and three counts against the Craigs, such mandatory repleader is fully warranted.

### CONCLUSION

For the reasons set forth above, the motion to dismiss is **granted in part**.  Counts 2, 5 and 20 are **dismissed without prejudice** on the plaintiff's request.  Counts 13-18 are **dismissed without prejudice** because the plaintiff admits they are brought exclusively against fictitious defendants.  Counts 1, 3, 4, 6, 8, 9, 10, 11, 12, 19 and 21 are **dismissed with prejudice** as to the DHR defendants, which have unimpaired Eleventh Amendment

immunity; these counts, and Count 7, are **dismissed without prejudice** to the extent they are brought against fictitious defendants and/or Sheila Stone.

The motion to dismiss is **denied** in all other respects.  Surviving the motion to dismiss are the Title VI claim (Count 7) as against the DHR defendants and the conspiracy claims (Counts 10-12) as against the Craigs.

The plaintiff is **ordered** to file and serve, on or before **October 14, 2011**, an amended complaint that eliminates the dismissed counts, eliminates all factual allegations that do not relate to one or more of the surviving counts, and that honors the Eleventh Circuit's proscription against shotgun pleadings.  Should the plaintiff fail to comply, either by filing nothing or by filing a pleading that does not satisfactorily address these matters, "the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions."  *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001).

DONE and ORDERED this 29th day of September, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

[11]